UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOHN OLAGUES, )
 )
       **Plaintiff,** )
 )
v. ) Case No. 17-CV-0153-CVE-JFJ
 )
RICHARD E. MUNCRIEF, DENNIS )
CAMERON, and WPX ENERGY INC., )
 )
       **Defendants.** )

# OPINION AND ORDER

Now before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 26) and Plaintiff's Motion for Partial Modification of the PLSRA Discovery Stay and Brief in Support (Dkt. # 40). Plaintiff John Olagues filed this case alleging that Richard E. Muncrief and Dennis Cameron abused their positions as corporate officers of WPX Energy Inc. (WPX) and engaged in prohibited short-swing transactions in violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p. Defendants filed a motion to dismiss asserting that the transactions identified by plaintiff are exempt from the requirements of § 16(b), and they asked the Court to take judicial notice of documents related to the transactions. Dkt. # 27, 28. The Court converted the motion to dismiss into a motion for summary judgment, and the parties were directed to submit any additional evidence and arguments in support of their positions. Dkt. # 39. Plaintiff asks the Court to allow him to conduct "discrete" discovery as to defendants' intent in entering agreements for the distribution of shares of WPX stock to Muncrief and Cameron, and defendants oppose plaintiff's request. Dkt. ## 40, 41.

**I.**

Olagues alleges that he is a shareholder of WPX and was a shareholder when the transactions at issue in this case occurred. Dkt. # 24, at 1. Muncrief is the president and chief executive officer (CEO) of WPX, and Cameron is the general counsel of WPX. Id. at 2. WPX is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and its stock is publicly traded on the New York Stock Exchange. Id. Plaintiff alleges that Muncrief purchased 90,000 shares of WPX stock between December 10, 2014 and August 21, 2015, and he alleges that Cameron purchased 1,800 shares of WPX stock on August 25, 2015. Id. at 4. Plaintiff claims that defendants engaged in prohibited short-swing transactions by either purchasing and selling or selling and purchasing shares of WPX stock within a six month time period. Id. The amended complaint alleges that Muncrief disposed of 90,000 shares of WPX stock on May 15, 2015, and plaintiff matches this disposition against the purchases made between December 10, 2014 and August 21, 2015. Id. Plaintiff claims that Cameron disposed of 1,800 shares on March 2, 2015, and this was within six months of his subsequent purchase of 1,800 shares on August 25, 2015. He alleges that Muncrief realized a short swing profit of $375,600 and Cameron realized a short swing profit of $9,324. Id.

Plaintiff is correct that defendants made some open market purchases of WPX stock, but the dispositions identified in the amended complaint were made pursuant to restricted stock unit agreements (RSU Agreements). Plaintiff alleges that Muncrief disposed of 90,000 shares of WPX stock on May 15, 2015, and defendants have produced a Securities and Exchange Commission (SEC) Form 4 showing that Muncrief disposed of 90,843 shares to WPX on that date. Dkt. # 28-3. However, he also received 192,463 shares on the same day, and the SEC Form 4 clearly states that

he received the shares when his right to the shares vested under an RSU agreement. Id. Cameron received 5,724 shares of WPX stock on March 3, 2015, and a note on the SEC Form 4 states that he received the shares pursuant to an RSU agreement. Dkt. # 28-7, at 2. Cameron disposed of 1,866 shares to WPX on the same day, and a separate note on the SEC Form 4 states that these shares were withheld to satisfy Cameron's tax obligation upon the receipt of shares under the RSU agreeement. Id.

WPX established an Incentive Plan (the Plan) on May 22, 2013, which states that it will remain in effect for 10 years unless terminated by WPX's board of directors. Dkt. # 28-9, at 6. The Plan is intended to "allow selected employees and officers of the Company and its Affiliates to acquire or increase equity ownership in the Company, thereby strengthening their commitment to the success of the Company and stimulating their efforts on behalf of the Company . . . ." Id. The Plan is administered by the board of directors with respect to non-management directors, but the Plan created an independent committee with respect to awards of stock to executive officers of WPX. Id. at 9. The Plan states that the independent committee was expressly created for the purpose of complying with § 16(b) and other statutory requirements:

> In addition, to the extent that the Board considers it desirable to comply with Rule 16b-3[1] or meet the Performance-Based Exception, the Committee shall consist of two or more directors of the Company, all of whom qualify both as "outside directors" within the meaning of Section 162(m) of the Code[2] and as Section 16 Non-Management Directors (the "Independent Committee"). The number of members of the Committee shall from time to time be increased or decreased, and shall be subject to such conditions, in each case as the Board deems appropriate to permit

---

[1] The Plan cites 17 C.F.R. § 240.16b-3, which will be referred to as Rule 16b-3 herein.

[2] The Plan defines "the Code" as the Internal Revenue Code. Id. at 7. Section 162(m) of the Internal Revenue Code concerns when a publicly held company may deduct amounts paid to certain employees for compensation and expenses. 26 U.S.C. § 162(m).

3

transactions in Shares pursuant to the Plan to satisfy such conditions of Rule 16b-3 and the Performance-Based Exception as then in effect.

Id. at 10. The independent committee is authorized to take any necessary action to ensure that a transaction complies with § 16(b), and this includes the authority to amend the Plan or any provision of an award agreement. Id. at 17. When shares of WPX stock are delivered to a grantee, the grantee is required to "remit an amount in cash, or in the Company's discretion, in Shares, valued at their Fair Markey Value on the date the withholding obligation arises, sufficient to satisfy all of the employer's federal, state, and local tax withholding requirements related thereto . . . ." Id. at 28.

WPX and Muncrief executed an RSU Agreement giving him the opportunity to earn shares of WPX stock, and Muncrief's right to receive the shares would vest on May 15, 2015 if he remained an employee of WPX at that time. Dkt. # 28-11, at 1. The RSU Agreement contains the following provision concerning tax withholding:

> (e) Upon conversion of RSUs into Shares under this Agreement, such RSUs shall be cancelled. Shares that become payable under this Agreement will be paid by the Company by the delivery to the Participant, or the Participant's beneficiary or legal representative, of one or more certificates (or other indicia of ownership) representing shares of Common Stock equal in number to the number of Shares otherwise payable under this Agreement less the number of Shares having a Fair Market Value, as of the date the withholding tax obligation arises, equal to the minimum statutory withholding requirements. Notwithstanding the foregoing, to the extent permitted by Section 409A of the Code and the guidance issued by the Internal Revenue Service thereunder, if federal employment taxes become due when the Participant becomes entitled to payment of Shares, the number of Shares necessary to cover minimum statutory withholding requirements may, in the discretion of the Company, be used to satisfy such requirements upon such entitlement.

Id. at 3. Defendants have not submitted a copy of Cameron's award agreement, but the parties do not dispute that the same form RSU Agreement was used and that the relevant provision concerning tax withholding was contained in Cameron's agreement. Dkt. # 27, at 11; Dkt. # 34, at 6.

4

On September 12, 2016, plaintiff sent a letter to WPX alleging that Muncrief and Cameron made $385,924 in profits on short-swing transactions, and he stated that he was a shareholder authorized to file suit on behalf of WPX for the alleged violations of § 16(b). Dkt. # 28-12, at 2. WPX sent plaintiff a letter explaining that the transactions that he had identified were exempt tax withholding transactions and that no violation of § 16(b) had occurred. Dkt. # 28-13, at 2-4. On January 7, 2017, plaintiff sent a second letter threatening to file suit on behalf of WPX, and he attached a copy of a pro se complaint that he intended to file in the United States District Court for the Northern District of Oklahoma. Dkt. # 28-14. Plaintiff did file suit alleging that Muncrief and Cameron engaged in prohibited short-swing transactions in violation of §16(b), but he was not represented by an attorney. Dkt. # 1. The case was randomly assigned to the Honorable Gregory K. Frizzell. Defendants filed a motion to dismiss (Dkt. # 11) the complaint on the ground that a pro se plaintiff cannot proceed with a claim under § 16(b). The motion to dismiss was granted and plaintiff's pro se complaint was dismissed, but he was given 30 days to obtain counsel and file an amended complaint. Dkt. # 16. Plaintiff retained counsel and filed an amended complaint (Dkt. # 24), and defendants filed a motion to dismiss (Dkt. # 26) asserting that plaintiff had failed to state a claim upon which relief could be granted. Defendants also filed a motion asking the Court to take judicial notice of certain documents that were not referenced in or attached to the amended complaint. Dkt. # 28. The case was reassigned to the undersigned, who converted the motion to dismiss into a motion for summary judgment, and gave the parties 14 days to submit any additional evidence or arguments. Dkt. # 40. Neither plaintiff nor defendants provided any additional evidence, and defendants' motion for summary judgment is fully briefed.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Defendants argue that the dispositions of WPX stock identified in plaintiff's amended complaint are exempt tax withholding transactions under Rule 16b-3, and defendants assert that the amended complaint does not state a violation of § 16(b). Plaintiff responds that WPX had the discretion to withhold shares for the payment of taxes, but tax withholding was not mandatory and the purchases listed in the amended complaint were not exempt under Rule 16b-3.

"Section 16(b) of the Exchange Act requires statutory insiders–[including] those with beneficial ownership interest of more than 10% in an equity security–to disgorge all profits realized from any purchase and sale (or sale and purchase) of the same security made within a six month period." Olagues v. Perceptive Advisers, LLC, 2017 WL 3605511 (S.D.N.Y. July 26, 2017) (quoting Analytical Surveys, Inc. v. Tonga Parnters, L.P., 684 F.3d 36, 43 (2d Cir. 2012)). To prevail on a § 16(b) claim, a plaintiff must prove that there was "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." Gwozdzinsky v. Zell/Chillmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998). A party seeking to compel disgorgement does not need to show that the corporate officer or insider actually misused inside information or acted with unlawful intent.[3] Levy v. Sterling Holding Co., LLC, 544 F.3d 493 (3d Cir. 2008); Magma Power Co. v. Dow Chemical Co., 136 F.3d 316, 320 (2d Cir. 1998). Section

---

3   Plaintiff has asked the Court to allow limited discovery as to defendants' intent in negotiating and drafting the RSU Agreements. Dkt. # 40. Case law is clear that the intent of the contracting parties is irrelevant under § 16(b), and defendants can be held liable if they intended to enter an exempt transaction but failed to comply with SEC regulations. See Roth v. Goldman Sachs Group, Inc., 740 F.3d 865 (2d Cir. 2014) (noting that § 16(b) is a strict liability statute and disgorgement may be ordered without a finding of unlawful intent). The discovery that plaintiff seeks is irrelevant, and his motion (Dkt. # 40) is denied.

16(b) permits the SEC to issue rules concerning the enforcement of the statute, including rules exempting transactions that are not deemed illegal considering the purpose of the § 16(b). 15 U.S.C. § 78p.

The SEC has issued a rule exempting certain transactions from the scope of § 16(b). Under Rule 16b-3, a transaction between an issuer of a security and an officer or director of the issuer is exempt from § 16(b) if the requirements of the rule are satisfied. Rule 16b-3 provides that:

> Dispositions to the issuer. Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

17 C.F.R. § 240.16b-3(e). And paragraph (d)(1) of the section exempts any transaction "involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose" if the transaction is approved by the issuer's board of directors or a committee of the board of directors that is composed solely of two or more Non-Employee Directors. 17 C.F.R. § 250.16b-3(d)(1). The SEC has found that "such issuer-insider transactions are 'not comprehended within' the purpose of Section 16(b) because they typically lack the information asymmetry associated with market transactions between insiders and ordinary investors." Huppe v. WPCS Int'l Inc., 670 F.3d 214, 219 (2d Cir. 2012). Stated another way, the issuer and the insider involved in the transaction have access to the same information, and there is no informational imbalance between the issuer and the insider. Roth ex rel. Beacon Power Corp. v. Perseus LLC, 522 F.3d 242, 249 (2d Cir. 2008).

In this case, the parties do not dispute that Muncrief and Cameron were insiders for the purpose of § 16(b) or that there was a purchase and sale of WPX stock within a six month period.

The issue in dispute is whether the disposition of stock to WPX by Muncrief and Cameron to satisfy their tax liability when receiving stock pursuant to RSU Agreements were exempt transactions under Rule 16b-3. Plaintiff alleges in his amended complaint that payment of the tax liability was discretionary, because the tax liability did not immediately accrue and payment of the taxes was deferred under rules promulgated by the Internal Revenue Service. Dkt. # 24, at 5-7. Plaintiff cites 26 U.S.C. § 83(c) and claims that Muncrief and Cameron did not incur immediate tax liability upon exercising their right to receive shares of WPX stock under the RSU Agreements, because tax liability is deferred when income from the sale of stock could subject a person to liability under § 16(b). Defendants respond that plaintiff is blatantly misconstruing the plain language of the RSU Agreements, and the disposition of stock to WPX for the purpose of satisfying Muncrief's and Cameron's tax liabilities were exempt transactions under § 16(b).

The first part of plaintiff's argument, in an attempt to show that Muncrief and Cameron violated § 16(b), is that WPX had the discretion to withhold shares to pay tax liabilities when the shares were issued to Muncrief and Cameron under the RSU Agreements. Plaintiff relies on the following provision from the Plan:

16.1 Mandatory Tax Withholding

(a) Whenever, under the Plan, (i) Shares are to be delivered upon payment of an Award, (ii) Shares of Restricted Stock become nonforfeitable, (iii) a cash payment is made for any Award, or (iv) any other payment event occurs with respect to rights and benefits hereunder, the Company or any Affiliate shall be entitled to require (A) that the Grantee remit an amount in cash, or in the Company's discretion, in Shares, valued at their Fair Market Value on the date the withholding obligation arises, sufficient to satisfy all of the employer's federal, state, and local tax withholding requirements related thereto but no more than the minimum amount necessary to satisfy such amounts ("Required Withholding"), (B) the withholding of such Required Withholding from compensation otherwise due to the Grantee or from any Shares valued at their Fair Market Value at the date the withholding obligation

9

arises, or from any other payment due to the Grantee under the Plan or otherwise or (C) any combination of the foregoing.

Dkt. # 28-9, at 28. Plaintiff also relies on a provision in the RSU Agreements concerning tax withholding following the issuance of shares to an employee:

> (e) Upon conversion of RSUs into Shares under this Agreement, such RSUs shall be cancelled. Shares that become payable under this Agreement will be paid by the Company by the delivery to the Participant, or the Participant's beneficiary or legal representative, of one or more certificates (or other indicia of ownership) representing shares of Common Stock equal in number to the number of Shares otherwise payable under this Agreement less the number of Shares having a Fair Market Value, as of the date the withholding tax obligation arises, equal to the minimum statutory withholding requirements. Notwithstanding the foregoing, to the extent permitted by Section 409A of the Code and the guidance issued by the Internal Revenue Service thereunder, if federal employment taxes become due when the Participant becomes entitled to payment of Shares, the number of Shares necessary to cover minimum statutory withholding requirements may, in the discretion of the Company, be used to satisfy such requirements upon such entitlement.

Dkt. # 28-10, at 5. Plaintiff argues that the Plan gives the company discretion to withhold shares to pay an employee's tax obligation, but he argues that this is not mandatory under the Plan.

Before considering plaintiff's arguments concerning the allegedly discretionary tax withholding transactions, the Court finds that there is a more fundamental problem with the claim being advanced by plaintiff in this case. Plaintiff has used public records to identify open market purchases of stock by Muncrief and Cameron, and he is attempting to match those purchases against a sale that occurred immediately after Muncrief and Cameron received stock as compensation for meeting vesting requirements in the RSU Agreements. It is reasonable to question whether the open market purchases of WPX stock by Muncrief and Cameron should have been matched against an open market sale, rather than a sale that occurred immediately upon the issuance of securities pursuant to an RSU Agreement for compensatory purposes. The SEC has issued guidance that

10

transactions between and issuer of securities and an officer or director are generally exempt from the scope of § 16(b), and routine transactions under specified tax-conditioned plans are exempt without any further conditions other than approval by the board of directors or an appropriate committee. Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed. Reg. 30376, 1996 WL 324486 (June 14, 1996). The Court also notes that it is unclear that Muncrief and Cameron actually realized a profit from the withholding of shares to pay their tax obligations. Instead, Muncrief and Cameron received shares under a previously arranged transaction and some of those shares were returned to WPX to satisfy their tax obligations. This is not a situation where they purchased shares on the open market and used inside information to sell their shares at a profit, and it is not clear that § 16(b) applies in this situation. However, the Court will consider plaintiff's argument that the transactions at issue in this case violated § 16(b).

Plaintiff argues that the transactions at issue in this case were not exempt under Rule 16b-3, because WPX had the discretion to withhold shares to satisfy Muncrief's and Cameron's tax obligations but the withholding was not mandatory. Dkt. # 34, at 5,13-16. He also argues that Muncrief and Cameron could have deferred payment of taxes under 26 U.S.C. § 83(c), and this also shows that the transactions were discretionary. Id. at 19-21. The Court does not find that these are separate arguments; the sole issue raised by plaintiff is whether the tax withholding transactions can be deemed discretionary under Rule 16b-3. Under 26 U.S.C. § 83(a), property transferred to a person for the performance of services must be included as part of that person's gross income unless it is subject to a substantial risk of forfeiture. Property is subject to a subject to a substantial risk of forfeiture if "the sale of property at a profit could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934 . . . ." 26 U.S.C. § 83(c)(3). The issue of whether payment of

11

taxes can be deferred depends on the status of a transaction as exempt or non-exempt under § 16(b), and resolving the status of the tax withholding transactions as exempt or non-exempt will necessarily dispose of plaintiff's argument that Muncrief and Cameron could have deferred payment of taxes.

Defendants argue that the disposition of shares to WPX occurred pursuant to a mandatory tax withholding transaction, and they assert that this type of transaction is exempt under Rule 16b-3. Under Rule 16b-3, an acquisition or disposition of shares is exempt from liability under § 16(b) if "the transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors . . . ." 17 C.F.R. § 240.16b-3(d)(1). In this case, both Muncrief and Cameron received shares of WPX stock pursuant to RSU Agreements, and they were eligible to receive the shares only after the necessary conditions for vesting of the shares were satisfied. Dkt. # 28-3, at 2; Dkt. # 28-7, at 2; Dkt. # 28-11, at 2. Under the Plan, any award of WPX stock to an officer or director must be approved by an independent committee, and the Plan specifically contemplates that the committee will comply with the requirements of Rule 16b-3. Dkt. # 28-9, at 10. Plaintiff does not argue that there was an impropriety in the formation or membership of the committee or that the RSU Agreements were not approved by an appropriate committee. The Court finds that the RSU Agreements were approved by a committee of the board of directors and satisfy the requirements of Rule 16b-3(d)(1).

Plaintiff argues that the transactions are not exempt under Rule 16b-3, even if they appear to satisfy Rule 16b-3(d)(1), because the transactions are non-exempt "discretionary transactions" under Rule 16b-3. Plaintiff cites the tax withholding provision of the Plan, which states that the grantee must "remit an amount in cash, or in the Company's discretion, in Shares, valued at their Fair Market Value on the date the withholding obligation arises . . . ." Dkt. # 28-9, at 28. He also

12

notes that the RSU Agreements provide that "the number of Shares necessary to cover minimum statutory withholding requirements may, in the discretion of the Company, be used to satisfy such requirements upon such entitlement." Dkt. # 28-10, at 5. Plaintiff quotes the first sentence of Note 3 to Rule 16b-3 for the proposition that each specific transaction must be approved by the board of directors or an independent committee, and the requirements of Rule 16b-3 are "not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms of each transaction are fixed in advance . . . ."

Plaintiff should have read the second sentence of Note 3 to Rule 16b-3. Note 3 goes on to state that:

> Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval.

17 C.F.R. § 240.16b-3. The committee was not required to separately approve a tax withholding transaction, because the RSU Agreements were approved and the tax withholding transaction was specifically contemplated in the RSU Agreements. Plaintiff's argument regarding the withholding of shares is also based on a selective reading of the underlying documents. Plaintiff argues that the tax withholding transaction was discretionary in nature because, under the Plan, WPX had the discretion to withhold shares or accept a cash payment from the employee for settlement of the employee's tax liability. Dkt # 34, at 16. However, the RSU Agreements are the documents specifically authorizing both the award of shares to Muncrief and Cameron and the tax withholding transactions, and the withholding of shares to satisfy Muncrief's and Cameron's tax obligations was mandatory. The RSU Agreements state that the grantee shall receive "shares of Common Stock equal in number to the number of Shares otherwise payable under this Agreement less the number

13

of Shares having a Fair Market Value, as of the date the withholding tax obligation arises, equal to the minimum statutory withholding requirements." Dkt. # 28-10, at 5. The dispositions of stock identified by plaintiff were non-discretionary tax withholding transactions that were specifically contemplated in the RSU Agreements, and the board of directors did not need to separately authorize the withholding transactions. The Court finds that the disposition of shares by Muncrief on May 15, 2015 and by Cameron on March 3, 2015 qualify as exempt transactions under Rule 16b-3.

Based on this finding, plaintiff cannot show that defendants violated § 16(b) and defendants' motion for summary judgment (Dkt. # 26) should be granted. Plaintiff attempts to match open market purchases of WPX stock by Muncrief and Cameron to the tax withholding transactions to support a violation of § 16(b), but the tax withholding transactions are exempt and cannot be used to show that a prohibited short-swing transaction occurred. The exempt status of the transactions also means that payment of taxes owed by Muncrief and Cameron could not be deferred under § 83(c), and plaintiff's argument concerning the tax status of the transactions does not support a finding that § 16(b) was violated.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Dkt. # 26) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Modification of the PLSRA Discovery Stay and Brief in Support (Dkt. # 40) is **denied**.

**DATED** this 26th day of January, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE